FEB 1 4 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PAMELA S. EDUKONIS,              )
                                 )
        Plaintiff,               )
                                 )
v.                               )        1:18-cv-00807 (LO/IDD)
                                 )
NANCY A. BERRYHILL,              )
Acting Commissioner of Social Security,[1]  )
                                 )
        Defendant.               )
_____)

### REPORT AND RECOMMENDATION

This matter is before the Court on the parties' cross-motions for summary judgment (Dkt.

Nos. 11, 13). Pursuant to 42 U.S.C. § 405(g), Pamela S. Edukonis ("Plaintiff") seeks judicial

review of the final decision of the Commissioner of the Social Security Administration

("Commissioner" or "Defendant") denying her claim for disability insurance benefits ("DIB")

under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434. For the reasons stated

below, the Court finds that Defendant's decision is supported by substantial evidence, and that

there is no evidence warranting remand. Accordingly, the undersigned recommends that

Defendant's Motion for Summary Judgment be **GRANTED** [Dkt. No. 13] and that Plaintiff's

Motion for Summary Judgment [Dkt. No. 11] be **DENIED**.

### I.        PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on December 14, 2014, alleging disability since

November 15, 2012, due to various impairments of fibromyalgia, migraine headaches, and irritable

bowel syndrome. (Administrative Record ("R.") at 14, 232.) Plaintiff's initial claim was denied on

---

[1] Although the docket names Nancy Berryhill as the Acting Commissioner of Social Security, Andrew Saul is the current Acting Commissioner.

1

July 31, 2013 and again upon reconsideration on August 7, 2014. *Id.* at 14. Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ") on September 17, 2014. *Id.* A hearing before ALJ Susan G. Smith was conducted on January 23, 2017. *Id.* at 13-14.

On May 2, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. *Id.* at 11-34. On April 25, 2018, the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). *Id.* at 1-6. Having exhausted her administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision on June 28, 2018. Compl., Dkt. No. 1. Cross-motions for summary judgment were filed and this matter is ripe for disposition.

## II.       STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, this Court is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is more than a mere scintilla but less than a preponderance of the evidence. *Craig*, 76 F.3d at 589. An ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). In reviewing the record for substantial evidence, the court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*,

76 F.3d at 589). If the ALJ's determination is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390.

The Fourth Circuit applies a harmless error analysis in the context of social security disability determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir.2015); *Hammond v. Colvin*, No. 1:12-CV-01177, 2013 WL 5972432, at *6 (E.D. Va. Nov. 8, 2013). The harmless error doctrine prevents a remand when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, No. 1:17-CV-167, 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed. Appx. 65, 67 (4th Cir. 2014) (per curiam)). An ALJ's error may be deemed harmless when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-CV-61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When reviewing a decision for harmless error, a court must look at "[a]n estimation of the likelihood that the result would have been different." *See Morton-Thompson v. Colvin*, No. 3:14-CV-179, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)).

III.    **DETERMINING DISABILITY AND THE ALJ'S DECISION**

A. **Determining Disability and the Sequential Analysis**

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

3

of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that make it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. *Id.*; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. Specifically, the ALJ must consider whether the claimant: (1) is engaged in substantial gainful activity;[2] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official Listing of Impairments; (4) has an impairment that prevents past relevant work;[3] and (5) has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 416.920(e)–(f), 416.945(a)(1). *Morris v. Berryhill*, No. 3:16-CV-587, 2017 WL 4112365, at *6 (E.D. Va. Aug. 30, 2017), *report and recommendation adopted*, 2017 WL 4108939 (E.D. Va. Sept. 15, 2017).

## B. The ALJ's Decision

At step one of the sequential evaluation the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 15, 2012. R. at 16. At step two of the sequential evaluation, the ALJ found that Plaintiff had various severe and non-severe medically determinable impairments. *Id.* at 16-19. The ALJ found the following impairments

---

[2] Substantial gainful activity ("SGA") is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks, hobbies, therapy, school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[3] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b), 404.1565(a).

severe: cervical and lumbar spines, degenerative tearing of the right knee status-post surgery, fibromyalgia with chronic fatigue, headaches, gastroesophageal reflux disease, postural orthostatic tachycardia syndrome, and anxiety. *Id.* at 16. As far as non-severe impairments, the ALJ found Plaintiff's carpal tunnel syndrome non severe as well as her hip impairment. *Id.* at 17. The ALJ found that Plaintiff did not have any persistent problems with gynecological disorders, nor did she have symptoms related to vitamin D deficiency. *Id.* The ALJ also found that Plaintiff did not have a severe impairment of depression or attention deficit disorder, nor did she have a severe substance abuse disorder. *Id.* at 18. Lastly, the ALJ found that Plaintiff's Ehlers-Danlos syndrome was not severe. *Id.* at 19.

At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 19. In between steps three and four of the sequential evaluation, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff could occasionally stoop, kneel, balance, crouch, crawl and climb ramps and stairs. *Id.* at 22. But Plaintiff could never climb ladders, ropes, or scaffolds and must avoid concentrated exposure to hazards, including dangerous machinery, uneven terrain, and unprotected heights. *Id.* Additionally, the RFC included that Plaintiff must have ready access to the restroom during regularly scheduled breaks and must be limited to simple, routine repetitive tasks, and avoid concentrated exposure to loud noise and bright light. *Id.* At step four of the sequential evaluation, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.* at 32.  At step five of the sequential evaluation, the ALJ found that Plaintiff was able to perform jobs that existed in significant numbers in the national economy. *Id.* Based on the above, the ALJ concluded that Plaintiff was

not under a disability as defined by the Social Security Act, from November 15, 2012, to the date

of the ALJ's decision. *Id.* at 34.

# IV.       ANALYSIS

## C. Cross-Motions for Summary Judgment

Plaintiff raises five primary issues in this action: (1) that the ALJ failed to set forth a

narrative discussion of supporting evidence for Plaintiff's RFC assessment, (2) that the ALJ

failed to include any limitation on concentration, task, persistence, or pace in her RFC

assessment, (3) that the ALJ failed to properly assess the January 9, 2014 and March 11, 2015,

opinions of Stuart R. Stark, M.D., Plaintiff's treating physician, (4) that the ALJ failed to

adequately address Plaintiff's migraine headaches, and (5) that the ALJ's determination that

Plaintiff was not credible was not supported by substantial evidence, and that the record does not

support the ALJ's findings regarding Plaintiff's daily activities. Pl.'s Br. at 4-14.  In contrast,

Defendant seeks summary judgment on the ground that the ALJ's decision is supported by

substantial evidence and therefore should be affirmed. Def.'s Br. at 2. Defendant's brief in

support of summary judgment focuses on disputing the arguments propounded by Plaintiff.

Therefore, the Court will address each of Plaintiff's objections to the ALJ's decision in turn.

## 1.  Narrative Discussion of Plaintiff's RFC

Plaintiff contends that the ALJ failed to have a narrative discussion and build an accurate

and logical bridge between the evidence and her determination of Plaintiff's RFC. Pl.'s Br. at 6-

7. Defendant argues that substantial evidence supports the ALJ's RFC assessment and that the

ALJ carefully reviewed the evidence of Plaintiff's impairments and explained how they resulted

in functional limitations. Def.'s Br. at 15-17. The undersigned agrees with Defendant and finds

that the ALJ thoroughly explained and cited to evidence which supported the determination of Plaintiff's RFC.

### i.   Applicable Law

The Fourth Circuit has declined to adopt a *per se* rule requiring courts to remand whenever an ALJ fails to conduct a function-by-function analysis. *See Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016); *Mascio,* 780 F.3d at 636. Instead, the Fourth Circuit holds the position that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (*per curiam*)). *See also Monroe*, 826 F.3d at 188. The Fourth Circuit has found harmful error where an ALJ's decision precludes meaningful review. *Mascio*, 780 F.3d at 636–37. The *Mascio* standard is satisfied if the ALJ (1) fashions an appropriately limited RFC or (2) performs a function-by-function analysis that explains, either explicitly or implicitly, why additional limitations are not necessary. *Oldham v. Berryhill*, No. 2:16-CV-659, 2018 WL 773442, at *8 (E.D. Va. Jan. 17, 2018).

An ALJ's RFC determination, as with all other steps in determining a plaintiff's disability status in social security matters, is subject to the "substantial evidence" standard of review, which is explained above. "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ must identify evidence that supports his or her conclusion and "build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th

Cir. 2018) (citing *Monroe*, 826 F.3d at 189).

In assessing a plaintiff's RFC, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Woods*, 888 F.3d at 694 (citing *Mascio*, 780 F.3d at 636). *See also Arthur v. Berryhill*, No. 3:17-CV-285, 2018 WL 3233362, at *11 (E.D. Va. June 12, 2018), *report and recommendation adopted*, 2018 WL 3232777 (E.D. Va. July 2, 2018); *Baker v. Colvin*, No. 3:15-CV-00637, 2016 WL 3581859, at *3 (E.D. Va. June 7, 2016). An ALJ's narrative discussion must explain how the evidence demonstrates the plaintiff could perform at the exertion level designated by the ALJ. *Woods*, 888 F.3d at 694. The ALJ generally must also ascribe more weight to treating physicians than to physicians who have only occasionally treated a claimant. 20 C.F.R. §§ 416.927(a)(2), (c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 261 (4th Cir. 2017).

## ii.   Analysis

The undersigned finds that the ALJ properly concluded an RFC assessment based on medical records, Plaintiff's testimony, vocational expert testimony, and State Agency physicians' evaluations. The Court notes that there is no rigid and particular format that the ALJ must use in order to assess a plaintiff's RFC, as long as the ALJ engaged in a reasoned discussion of plaintiff's functional limitations and work capacity. *See, e.g., Dryer v. Barnhart* 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining that there was "no rigid requirement" that the ALJ must "refer to every piece of evidence in his decision, so long as the ALJ's decision" sufficiently allows the reviewing court to conclude that the ALJ considered claimant's medical condition as a whole).

Here, in over ten pages of discussion, the ALJ set forth a narrative analysis that logically discussed the evidence relied on in determining Plaintiff's RFC. R. at 22-32. Plaintiff's RFC states that she has the capacity to perform light work except she can occasionally stoop, kneel, balance, crouch, crawl and climb ramps and stairs but can never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to hazards including dangerous moving machinery, uneven terrain and unprotected heights. *Id.* at 22. This finding demonstrates that the ALJ acknowledged Plaintiff's testimony that she was not able to stand for long periods of time and that when she was working in a physician's office laboratory, she found that job to be too physically and mentally demanding *Id.* at 49, 55-56.  Similarly, the ALJ found that Plaintiff had a history of back pain, right knee pain, and complained of dizziness. *Id.* at 24-25, 28.  However, an examination of the spine and recent progress notes show the presence of taut bands of the upper and lower paraspinals, but normal active range of motion, a 5/5 strength of the lower extremities, a normal gait, and no reference to a back impairment.  *Id.* The functional limitation in Plaintiff's RFC is supported by substantial evidence including objective medical evidence that Plaintiff's most recent examinations show that Plaintiff followed commands well, moved all extremities equally, and had a motor strength of 5/5, which are all cited by the ALJ in her opinion. *Id.* at 396, 493, 659, 669, 701, 708, 1111, 1123, 1382, 1400.

The ALJ's RFC determination also includes that  Plaintiff must have ready access to the restroom during regularly scheduled breaks, and she must be limited to simple, routine, repetitive tasks. *Id.* at 22. The RFC also states that Plaintiff must avoid concentrated exposure to loud noise and bright light. *Id.* The ALJ's decision references Plaintiff's complaints of fatigue, carpal tunnel, Plaintiff's testimony regarding her work history and difficulties she experienced while working, her issues with irritable bowel syndrome and gastroesophageal reflux disease, her

history of headaches, and her difficulty concentrating. *Id.* at 23, 25-27, 30-31. Based on the opinions from a state agency psychologist, Plaintiff's treating psychologist, and the credibility the ALJ gave to Plaintiff's history of anxiety, fibromyalgia fog, and issues with concentration, the ALJ limited Plaintiff to simple, routine, and repetitive work and cited to each psychologist's opinion in support. *Id.* at 31. The ALJ referenced Plaintiff's stated difficulty of holding objects and her testimony that she had to call off work because of migraines, diarrhea, and a need to use the bathroom for 25 to 30 minutes at a time. *Id.* at 23. The ALJ noted that a general surgeon diagnosed Plaintiff with gastroesophageal reflux disease and irritable bowel syndrome in March 2013, and then the ALJ cited to medical records from 2016 that show that Plaintiff reported that her medication for gastroesophageal reflux disease worked. *Id.* at 27. The ALJ addressed mental status examinations that revealed occasional anxiousness but were otherwise unremarkable, that her medication for anxiety worked, and that Plaintiff had "mild" symptoms. *Id.* at 28-29, 78, 96-97, 554-55. The ALJ's decision references multiple examinations and status reports concerning Plaintiff's headaches. *Id.* at 26-27. Although a more in depth discussion of Plaintiff's headaches is below, in short, the ALJ found the headaches to be menstrual related and controlled with medication. *Id.* The undersigned therefore finds that the ALJ conducted an RFC assessment that was supported by substantial evidence and in accordance with controlling law.

### 2. Plaintiff's Limitations on Concentration, Task Persistence, or Pace

Plaintiff argues that the ALJ did not include any limitation on concentration, task persistence, or pace in her RFC assessment, but instead limited Plaintiff to the performance of simple, routine, repetitive tasks. Pl.'s Br. at 7. Plaintiff compares the ALJ's decision here to the decision in *Mascio v. Colvin*, 780 F.3d 632, and argues that similar to the ALJ in *Mascio*, the ALJ here did not explain how Plaintiff's limitations "reflected moderate difficulties in

concentration, persistence, or pace." *Id.* at 8. In contrast, Defendant claims that the ALJ thoroughly explained the degree to which Plaintiff could concentrate, persist, or maintain pace. Def.'s Br. at 18. The undersigned agrees with Defendant as explained below.

### i.   Applicable Law

"[T]he Fourth Circuit requires ALJs to explain the connection between the medical evidence considered and the accommodation, or lack thereof, for moderate limitations in concentration, persistence, and pace in the residual functional capacity." *McNiff v. Berryhill*, No. 1:18CV1411, 2019 WL 3161840, at *15 (E.D. Va. June 4, 2019), *report and recommendation adopted*, 2019 WL 3084235 (E.D. Va. July 15, 2019). An ALJ "does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,'" without an explanation. *Mascio*, 780 F.3d 632 at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

In *Mascio*, the court remanded an ALJ decision where the ALJ's hypotheticals to a vocational expert did not address claimant's mental limitations. *Mascio*, 780 F.3d at 637. The vocational expert and the ALJ found that claimant could perform "unskilled work." *Id.* at 638. Yet, the ALJ did not explain why he did not include a limitation for concentration, persistence, or pace from claimant's RFC when he found that the claimant had moderate difficulties in maintaining all three. *Id.*

### ii.   Analysis

The undersigned finds that the ALJ here explained the connection between Plaintiff's evidence and the extent to which Plaintiff could concentrate, persist, and maintain pace. Unlike the ALJ in *Mascio*, the undersigned finds that the ALJ here addressed Plaintiff's mental limitations appropriately during the hypothetical and in Plaintiff's RFC assessment, based on the

discussion above and the evidence in the record. The undersigned recognizes that Plaintiff complained of difficulty concentrating as early as March 2013, (*Id*. at 442), and that the record reflects that she had generalized anxiety disorder and a high probability of attention deficit disorder. *Id*. at 493. However, Plaintiff stated that she was distracted when trying to complete tasks at home, not at work. *Id*. at 563. The record reflects that overall Plaintiff had no attention abnormalities. *Id*. at 400, 614, 619, 648, 659, 1134. And where the record reflects decreased concentration in February 2015, (*Id*. at 1039), another report from the same month noted that Plaintiff's attention span and concentration were normal. *Id*. at 1136.  Therefore, the undersigned agrees that based on the evidence in the record, the ALJ was correct in finding that Plaintiff had moderate limitations in concentration, persistence, and maintaining pace. Given that there was no finding of anything beyond moderate mental limitations, the undersigned finds that the ALJ's analysis in determining Plaintiff's RFC is sufficient. Further, the undersigned finds that such moderate limitations were properly explained and reflected in the RFC when the ALJ stated that Plaintiff must have ready access to the restroom during regularly scheduled breaks.

In her decision, the ALJ found that Plaintiff had moderate limitations regarding concentration, persistence, and maintaining pace. *Id*. at 20. She discussed that as of June 2013, Plaintiff reported that her difficulty in concentrating and completing tasks was attributed to exhaustion and then in 2014, Plaintiff indicated that her difficulties were attributed to experiencing great pain, rather than mental impairments. *Id*. at 21. The ALJ noted that although Dr. Stark diagnosed Plaintiff with attention deficit disorder, progress notes from Dr. Stark's office following the diagnosis showed Plaintiff to be alert and oriented and to have grossly normal attention and concentration. *Id*. Similarly, the ALJ stated that other physicians' examinations showed the same regarding Plaintiff's alertness and attention span. *Id*.

12

During the hypothetical to the vocational expert, the ALJ included "ready access to a restroom during regularly-scheduled breaks," while being limited to simple, routine, repetitive tasks. *Id.* at 70. In her opinion, the ALJ discussed that the state agency physicians concluded that claimant could perform light exertional work but had to avoid concentrated exposure to noise and hazards. *Id.* at 31. The ALJ noted, however, that Plaintiff had no other environmental or manipulative limitations. *Id.* The ALJ gave these opinions great weight because she found that they were consistent with evidence in the record. *Id.* The ALJ also considered the opinions of Tiffany M. Loe, P.A. and Dr. Stark, claimant's neurologist. The ALJ stated that Ms. Loe and Dr. Stark opined that Plaintiff could sit less than six hours during the workday, stand for five minutes at a time, and could not be exposed to environmental conditions, among other things. *Id.* But, the ALJ later noted that in April 2015, Ms. Loe wrote that Plaintiff had moderate limitations responding to changes in a work routine, and was able to understand, remember or carry out instructions. *Id.* Additionally, the ALJ analyzed Plaintiff's claims of depression and attention deficit disorder. *Id.* at 18, 20-21, 31. The ALJ determined that Plaintiff did not have a "'severe' medically determinable impairment of depression or attention deficit disorder." *Id.* at 18. Because the ALJ found both conditions to be non-medically determinable impairments, the ALJ appropriately did not consider either during the RFC assessment. In conclusion, the undersigned finds that the ALJ did not need to include a more detailed limitation in Plaintiff's RFC for concentration, task, and pace.

### 3.  January 2014 and March 2015 Opinions of Dr. Stark

Plaintiff alleges that the ALJ failed to properly assess the January 9, 2014, and March 11, 2015, opinions of Dr. Stark, Plaintiff's treating neurologist. The January 9, 2014, opinion states that Plaintiff's symptoms preclude her from being gainfully employed. Pl.'s Br. at 8. Plaintiff

states that the ALJ's opinion does not indicate whether the six factors under 20 C.F.R.

404.1527(c) were considered with respect to Dr. Stark's opinions. *Id.* at 8-11. Defendant argues

that the ALJ exhaustively discussed both opinions. Def.'s Br. at 20. Based on exhibits cited to in

the ALJ's opinion, the undersigned finds that although the ALJ did not directly address either

opinion of Dr. Stark, the ALJ did review those opinions and weigh the findings against more

recent evidence to come to a supported finding of Plaintiff's RFC.

### i.   Applicable Law

"An ALJ is required to evaluate and weigh medical opinions based on several non-

exhaustive factors: '(1) whether the physician has examined the applicant, (2) the treatment

relationship between the physician and the applicant, (3) the supportability of

the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether

the physician is a specialist.'" *Hayward v. Colvin*, No. 1:13CV597, 2014 WL 6705476, at *9

(E.D. Va. Nov. 26, 2014) (quoting *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). "[T]he

ALJ is required to give controlling weight to opinions proffered by a

claimant's treating physicians so long as the opinion is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the claimant's] case record." *Bogley v. Berryhill*, 706 F. App'x 112, 113 (4th Cir.

2017) (quoting *Lewis*, 858 F.3d 858 at 867). "If the ALJ determines

the treating physician's opinion is not entitled to controlling weight, he or she still must decide

how much weight to give the opinion and must provide 'specific reasons' for the weight given to

the treating source." *Harmon v. Colvin*, No. 2:13CV269, 2014 WL 2767094, at *3 (E.D. Va.

June 18, 2014).

Where an ALJ fails to discuss or assign weight to a medical opinion, reversal is not warranted if it is clear that the opinion was considered by the ALJ. *Tanner v. Comm'r of Soc. Sec.*, 602 Fed. Appx. 95, 100-01 (4th Cir. 2015) (finding harmless error when ALJ failed to expressly assign weight to an opinion because RFC reflected the opinion's recommendations, the opinion was included in evidence the ALJ considered, and it was unlikely that a remand would change the Commissioner's finding); *see also Keaton v. Colvin*, No. 3:15cv588, 2017 WL 875477 at *4 (E.D. Va. Mar. 3, 2017) (finding that the record showed that the ALJ reviewed and considered doctors' opinions despite not assigning them weight).

### ii.  Analysis

The undersigned finds that the ALJ reviewed and considered the January 4, 2014, and March 11, 2015, opinions of Dr. Stark for the following reasons. The January 4, 2014 opinion of Dr. Stark recaps past evaluations, diagnostic studies, lists current diagnoses, and concludes with a statement of Plaintiff's disability and prognosis. [4] R. at 803-04.  Dr. Stark begins by discussing Plaintiff's history of headaches since November 2008, and he wrote that he recommended a sleep study. *Id.* at 803. After the sleep study, Dr. Stark noted that Plaintiff's headaches became less frequent and severe but that Plaintiff developed other symptoms such as severe fatigue, episodic anxiety, impaired cognition, difficulty focusing and concentrating, nausea, and low back pain. *Id.* Dr. Stark stated that he diagnosed Plaintiff with chronic fatigue syndrome, chronic fibromyalgia, postural orthostatic tachycardia syndrome ("POTS"), chronic insomnia, generalized anxiety disorder, and adult-onset attention deficit disorder. *Id.* at 804. Dr. Stark opined that he believed that the cause of all six diagnoses was reactivation of the virus which caused infectious mononucleosis. *Id.* Because Dr. Stark found that Plaintiff's symptoms had

---

[4] This same opinion is signed with the date of March 11, 2015, on pages 1107-1108 of the record, which is Exhibit 33F.

been present for over a year and were expected to last for no less than one more year, he concluded that Plaintiff's symptoms precluded her from being gainfully employed in any capacity. *Id.*

An office visit report from Dr. Stark on March 11, 2015, lists Plaintiff's problems, current medications, and future appointments, but does not state whether Plaintiff is capable of working at any capacity. *Id.* at 1138-39. Regarding Plaintiff's problems, the list shows: insomnia due to medical condition, POTS, depression, right knee pain, bilateral carpal tunnel syndrome, drug-induced constipation, chronic fatigue fibromyalgia syndrome, migraine, adenomyosis, menorrhagia, chronic hip pain and low back pain. *Id.* at 1138. The record from that office visit does not show current diagnoses, disabilities, nor prognoses. *Id.* at 1138-39.

The January 4, 2014 and March 11, 2015, visits are included in the record as part of Exhibits 20F and 33F.  Further, in the ALJ's opinion, she cites to Exhibit 33F at least 57 times, and to Exhibit 20F at least 3 times. The ALJ cited to Exhibit 33F when analyzing Plaintiff's alleged impairments of carpal tunnel, hip pain, headaches, back pain,  uterine bleeding, depression and ADD, substance abuse, Ehlers-Danlos syndrome, and when discussing whether each impairment was severe. *Id.* at 17-31. Therefore, the undersigned finds that the ALJ did review the January 4, 2014 and March 11, 2015 opinions of Dr. Stark and Ms. Loe when the ALJ looked at the evidence contained in each exhibit.

Although the ALJ does not directly address Dr. Stark's notes from January 4, 2014 and March 11, 2015, the ALJ does directly address Dr. Stark's and Ms. Loe's opinion from April 8, 2015, which notes that Plaintiff is capable of performing less than sedentary work although the maximum she can carry is ten pounds, that Plaintiff can stand and/or work without interruption for 5 minutes, can sit without interruption for 60 minutes, and has very limited postural and

manipulative limitations. *Id.* at 1141-44. The ALJ stated that she considered the April 2015 opinions from Ms. Loe, and that Dr. Stark signed off on these opinions, and the reason she gave them little weight was because they were not supported by more than a few clinical and objective findings, and physical examinations did not support the limitations that Ms. Loe noted. *Id.* at 31. Lastly, the ALJ found that Plaintiff's history of treatment and daily activities were inconsistent with such limitations. R. 31. Thus, the undersigned finds that the ALJ directly addressed more recent opinions of Dr. Stark and Ms. Loe and sufficiently explained why these opinions received little weight.

Further, even if the ALJ erred by not directly addressing the January 4, 2014 and March 11, 2015 opinions, the undersigned finds that the error was harmless. The ALJ's analysis of the record supports Plaintiff's RFC. Thus, the undersigned finds that remand based on any such error would not result in a different finding from the Commissioner.

### 4.  Plaintiff's Headaches

Plaintiff argues that the ALJ failed to adequately address Plaintiff's migraine headaches. Pl.'s Br. at 11.  Specifically, Plaintiff asserts that the ALJ failed to explain how she took into consideration the frequency and duration of Plaintiff's migraines when determining the RFC, given the testimony of the vocational expert. *Id.* at 13. The vocational expert testified that an employee who is off task for more than 10% of the workday is not employable. *Id.* Plaintiff also claims that the ALJ did not find Plaintiff's testimony regarding frequency and duration of the headaches to be credible. *Id.* Defendant argues that the ALJ discussed Plaintiff's headaches thoroughly and with descriptions on frequency and duration. Def.'s Br. at 23. And based on the ALJ's analysis, Defendant asserts that the ALJ reasonably found that Plaintiff's headaches were episodic or menstrual related and controlled with medication. *Id.*  Regarding the vocational

17

expert's testimony and Plaintiff's testimony, Defendant argues that the evidence and the ALJ's assessment do not support either testimony. *Id.* at 24. The undersigned agrees with Defendant and finds that the ALJ discussed Plaintiff's migraine headaches in great detail.

### i.   Applicable Law

An ALJ must follow a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Lewis* 858 F.3d 858 at 866; §§ 404.1529(b), 416.929(b). "Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Lewis*, 858 F.3d at 866; §§ 404.1529(c), 416.929(c). When determining the second step, the ALJ is required to assess the credibility of the claimant's statements about symptoms and their functional effects. §§ 404.1529(c)(4), 416.929(c)(4).

### ii.   Analysis

The undersigned finds that the ALJ thoroughly addressed Plaintiff's migraine headaches and explained how she considered Plaintiff's migraines in determining her RFC. Plaintiff cites to cases outside of the Eastern District of Virginia in support of her argument that the ALJ failed to adequately address Plaintiff's migraines, but none of the cases Plaintiff cites are applicable to the facts of this case. In *Yvette J. v. Saul*, the court found that the ALJ did not provide specific references to the record to explain how the plaintiff's headaches translated into the RFC, given that the ALJ found the headaches to be severe. *Yvette J. v. Saul*, No. 8:18-cv-1282-GLS, 2019 WL 3720294 at *4 (D. Md. Aug. 6, 2019). Unlike in *Yvette*, here, the ALJ first discussed the history of Plaintiff's headaches and noted that Plaintiff initiated treatment for headaches in April

2012 and was diagnosed with what was described as "episodic menstrual migraine[s]" in 2014. R. at 26. Second, the ALJ analyzed the intensity and persistence of Plaintiff's headaches over time from 2012 to 2016. *Id.* The ALJ mentioned the duration of Plaintiff's headaches, which lasted various amount of days. *Id.* The ALJ's opinion discussed how Plaintiff continued to link her migraines to her menstrual cycle, and that as of May 2015, Plaintiff told her doctor that her headaches were overall improved outside of the menstrual window. *Id.* at 26-27. After August 2015, the ALJ found that subsequent progress notes did not contain references to headaches again until February 2016, and in June 2016 and August 2016, the ALJ noted that Plaintiff continued to report migraines but expressed that she found taking Maxalt effective. *Id.* at 27. In conclusion, the ALJ stated that the evidence showed that Plaintiff's headaches were episodic, menstrual related, and could be controlled with medication. *Id.* Therefore, Plaintiff's argument that the ALJ failed to adequately address migraine headaches is unsupported and *Yvette* is distinguishable.

Another case Plaintiff cites to is *Tiffany M. v. Berryhill*, 2019 WL 1596982. In *Tiffany*, the District Court of Maryland held that an ALJ did not explain, despite the claimant's migraines, how the claimant's daily activities showed how she could persist and stay on task for 85% of an eight-hour workday, and therefore, sustain a full-time job. *Tiffany M. Berryhill*, No. TMD 18-1766, 2019 WL 1596982 at *4-5 (D. Md. Apr. 15, 2019).

Unlike in *Tiffany*, the ALJ here built a logical bridge between Plaintiff's limitations, the vocational expert's testimony, and the jobs available to Plaintiff. First, the ALJ explained that the hypotheticals posed to the vocational expert were based on Plaintiff's complaints and testimony. R. at 33. Plaintiff testified that while she was working, it took her two-to-three times as long to complete tasks because she was suffering from migraine headaches and irritable bowel syndrome

which required frequent bathroom breaks. *Id.* at 55-56. Plaintiff testified that she had a headache a minimum of 15 days out of the month and to deal with them she had to be away from sound, light, and lie down. *Id.* at 56, 58-60. Additionally, Plaintiff stated that she is unable to stand for long periods of time. *Id.* at 56. As far as daily activities, Plaintiff said that she cannot commit to outings. *Id.* at 61. Plaintiff stated that she goes to the grocery store once or twice a month and her meal prep involves only frozen meals. *Id.* at 61-63. Plaintiff is able to drive her daughter to and from school when her husband is at work. *Id.* at 61-64. Here, the vocational expert testified that a hypothetical individual who would be absent more than one and a half days per month would not be able to perform any jobs, and that they could only be off task up to 10% of the time. *Id.* at 71-72. The ALJ then stated that since she found Plaintiff's complaints and testimony to be inconsistent with the evidence, the vocational expert's responses were disregarded because the ALJ's questions to the vocational expert were based on Plaintiff's testimony and subjective complaints. *Id.* at 33. To further explain her position, the ALJ noted that no treating or examining medical source had reported that Plaintiff would require absences and that Ms. Loe's opinion concerning manipulative limitations were inconsistent with the record.[5] *Id.* at 71-72,1143. While the ALJ explained why she disregarded the vocational expert's testimony regarding a hypothetical individual's ability to perform any jobs, the ALJ accounted for Plaintiff's migraines by limiting her exposure to noise and bright light. The undersigned finds that in addition to the ALJ adequately addressing Plaintiff's headaches, the ALJ also built a logical bridge between Plaintiff's limitations, the vocational expert's testimony, and jobs available to Plaintiff.

---

[5] Ms. Loe marked that Plaintiff was "limited" in reaching all directions, handling, fingering, and feeling skin, and that Plaintiff could "occasionally" do such gestures. *See* R. at 1143.

### 5.  Plaintiff's Testimony

Plaintiff alleges that the ALJ's determination that Plaintiff's testimony was not credible, is not supported by substantial evidence. Pl.'s Br. at 13. Plaintiff claims that the ALJ failed to explain how she decided which of Plaintiff's statements were believable and which were not, and that the ALJ erred by considering the type of activities Plaintiff could allegedly perform without considering the extent to which she could perform them. *Id.* at 14-15. Defendant asserts that the ALJ followed the two-step method for evaluating Plaintiff's subjective complaints, her ability to perform daily activities, and other medical evidence. Def.'s Br. at 24-27. The undersigned concludes that the ALJ clearly explained her determination of Plaintiff's credibility when compared to other evidence in the record, and thus agrees with Defendant.

### i.    Applicable Law

When evaluating a claimant's credibility, the ALJ must: (1) determine whether objective medical evidence of a medical impairment is reasonably likely to cause the pain claimed to exist; and (2) evaluate the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work. *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(b)-(c).

Specific findings are necessary if a claimant's testimony is to be found not credible. *See Smith v. Heckler*, 782 F.2d 1176 (4th Cir. 1986); *Smith v. Schweiker*, 719 F.2d 723 (4th Cir. 1984). If credibility determinations are based upon improper or irrational criteria, they cannot be sustained. *Breeden v. Weinberger*, 493 F.2d 1002 (4th Cir. 1974). Credibility determinations must refer specifically to the evidence forming the administrative law judge's conclusion, as the duty of explanation is always an important part of the administrative charge. *Hatcher v. Secretary*, 898 F.2d 21 (4th Cir.1989). Social Security Ruling ("SSR") 16–3p states that:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or

that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.

S.S.R. 16-3p, 2017 WL 5180404 at *10 (Oct. 25, 2017).

Rather, SSR 16-3p requires that the decision contain "specific reasons" for weight given to the individual's symptoms, be consistent and supported by evidence in the record, and be clearly articulated by the adjudicator. *Id.* If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding regarding the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d 171 at 176 (holding that the court is not to "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

### ii.   Analysis

The undersigned finds that the ALJ appropriately evaluated Plaintiff's complaints and testimony under the two step method for the reasons stated below.[6] Here, in over nine pages of discussion, the ALJ analyzed the following impairments and explained why Plaintiff's statements concerning intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record. R. at 24-32. The ALJ discussed Plaintiff's spine and back problems in two full paragraphs. *Id.* at 24.  The ALJ found that although Plaintiff had a history of back pain, examinations in 2015 showed stable results, normal strength and reflexes, 5/5 strength of the lower extremities, and no diagnosis of the cervical spine as of February, June, and August 2016. *Id.* at 24-25. Regarding Plaintiff's knee pain, the ALJ recognized that Plaintiff also had a history of right knee pain, degenerative tearing, and severe lateral compartment osteoarthritis

---

[6] Plaintiff makes a very generalized argument and does not specify which portions of Plaintiff's testimony the ALJ failed to explain were credible. Therefore, the Court will not capture all of Plaintiff's testimony but will address the portion of the ALJ's opinion that discusses Plaintiff's statements about her impairments, in contrast to other evidence in the record.

among other things. *Id.* at 25. However, the ALJ noted that an examination following such detection showed that Plaintiff was capable of moving all extremities equally and that she had a normal gait. *Id.* Further, examinations from November 2014 through June 2016, plus progress notes from August 2016, showed the same findings mentioned above in addition to a 5/5 strength of the lower extremities. *Id.* The ALJ discussed Plaintiff's history of fibromyalgia and noted that despite Plaintiff's complaints of pain and fatigue, her complaints were out of proportion compared to the medical evidence based off progress notes in 2015 and 2016. *Id.* at 26. The undersigned already addressed the ALJ's discussion of Plaintiff's headaches, but again underscores that the ALJ thoroughly examined Plaintiff's complaints and headache symptoms in contrast with other evidence in the record.

The ALJ also addressed Plaintiff's abdominal pain, occasional nausea, and diarrhea, for which Plaintiff was diagnosed with gastroesophageal reflux disease and irritable bowel syndrome. *Id.* at 27. Plaintiff was described medication and the ALJ noted that Plaintiff, in late 2015 and early 2016, reported that the medication for her gastroesophageal reflux disease worked. *Id.* Concerning dizziness, the ALJ found that more recent medical evidence did not reveal any significant symptoms of POTS. *Id.* The ALJ also pointed out that although Plaintiff went to the emergency room in December 2016 due to imbalance, the remaining evidence revealed that Plaintiff had a normal gait without assistance and did not contain any references to falls. *Id.* at 28. The ALJ then addressed Plaintiff's anxiety and discussed how mental status examinations by treating physicians other than Plaintiff's psychologist, showed occasional anxiousness but were otherwise unremarkable. *Id.* at 28. According to the ALJ, the evidence showed that Plaintiff appeared to be alert, oriented, with a normal mood, and no significant memory loss. *Id.* Given the analysis discussed above, the undersigned finds that the ALJ pointed

to substantial evidence in support of her decision and adequately explained the reasons for her findings concerning Plaintiff's credibility.

Lastly, Plaintiff argues that similar to the ALJs in *Woods v. Berryhill*, 888 F.3d 686, and *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, the ALJ here did not consider all of Plaintiff's statements about her daily activities. In *Woods*, the court held that an ALJ needed to consider the type of activities the claimant could perform in addition to the extent to which she could perform them. *Woods* 888 F.3d 686 at 695. In *Woods*, the claimant's statements that she could maintain personal hygiene and cook were considered by the ALJ but the claimant's statements of not being able to button clothes, dry after bathing, or not being able to turn pages in a book because of severe pain in her hands, were not. *Id.* at 694-95. In *Brown*, the court determined that an ALJ did not acknowledge the extent of claimant's activities as described by claimant during his testimony. *Brown*, 873 F.3d 251, 263 (4th Cir. 2017).

The undersigned finds that neither *Woods* nor *Brown* are applicable to the facts here. Unlike the ALJs in *Woods* and *Brown*, the ALJ here did not exclude portions of Plaintiff's testimony that revealed how she was limited in her daily activities. In reviewing Plaintiff's testimony, the undersigned finds that the ALJ's summary of Plaintiff's testimony is accurate. For the reasons discussed below, the undersigned finds that the ALJ not only considered the type of activities Plaintiff alleged she could perform, but the ALJ also considered the extent to which Plaintiff could perform them based on Plaintiff's own testimony.

Here, Plaintiff testified that she has not been able to go to church for a long time and that she goes to the grocery store once or twice a month and can pick up one to two grocery bags. R. at 61. Socially, Plaintiff cannot commit to friend outings because her attendance depends on how she feels. *Id.* Plaintiff can take a shower, at most, two days a week because she finds the task

24

exhausting. *Id.* at 62. Plaintiff is not able to mop around the house, but she can make the beds about once a week and help with meal prep if it involves a frozen meal. *Id.* at 62-63. Plaintiff testified that she drives her daughter to and from school on the days her husband is not home; her husband is home three days out of a two-week work period. *Id.* at 64.

When discussing Plaintiff's daily activities in her opinion, the ALJ started with Plaintiff's daily activities in 2013. The ALJ noted that in 2013 Plaintiff's typical day involved waking up at 6:30 a.m., getting her daughter up for school, preparing a simple breakfast, driving her daughter to school, then resting at home and using the dishwasher and folding laundry, all before picking up her daughter from school. *Id.* at 28. At that time, the ALJ discussed that Plaintiff vacuumed, dusted, and went grocery shopping for 60 minutes one to two times a month, and attended church three times a month. *Id.* The ALJ then discussed Plaintiff's daily activities in 2014, which included many of the same daily activities in 2013 but in addition, Plaintiff reported that she worked from home on a needed basis. *Id.* at 28-29. The ALJ noted that in June 2016 Plaintiff was occasionally driving long distances, and then the ALJ summarized Plaintiff's testimony about her daily activities thoroughly. *Id.* at 29. The ALJ discussed that Plaintiff testified that she has not been able to go to church in a long time. *Id.* The ALJ also discussed, among other things, that Plaintiff grocery shops once or twice a month, showers once or twice a week, sweeps once a month, makes the bed once a week, and puts frozen meals together. *Id.* In conclusion, the ALJ found that Plaintiff's self-reported daily activities were inconsistent with a disabled individual because Plaintiff generally had 5/5 strength, no evidence of muscle atrophy, and remained active. *Id.* Given the ALJ's discussion as outlined above, the undersigned finds that the ALJ appropriately evaluated Plaintiff's complaints and testimony under the two step method.

## RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment [Dkt. No. 11] be DENIED and Defendant's Motion for Summary Judgment [Dkt. No. 13] be GRANTED.

### VI.        NOTICE

By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

February 14 , 2020
Alexandria, Virginia

                                        /s/
                                Ivan D. Davis
                                United States Magistrate Judge